OPINION
{¶ 1} On November 3, 2000, appellant, James Mox, was working as a private police officer for Cedar Point. In attempting to stop a speeding vehicle, appellant exited a toll booth and was struck by the vehicle. At the time of the accident, Cedar Point was insured under two commercial automobile policies issued by appellee, Hartford Fire Insurance Company, Nos. 45 CSE D62804 and 45 CSE D62805 (hereinafter "804" and "805").
 {¶ 2} On August 14, 2001, appellant filed a complaint against Hartford seeking uninsured/underinsured motorists benefits. Both parties filed motions for summary judgment. By journal entries filed April 2 and May 27, 2004, the trial court granted Hartford's motion for summary judgment and denied appellant's motion.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 4} "The trial court erred in granting summary judgment to appellee hartford fire insurance company."
 I {¶ 5} Appellant claims the trial court erred in granting summary judgment to Hartford. Specifically, appellant claims the trial court erred in determining the Hartford 805 policy contained a valid rejection of uninsured/underinsured motorists coverage, and appellant was not an insured under the Hartford 804 policy. We agree in part.
 {¶ 6} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins, 75 Ohio St.3d 447, 448,1996-Ohio-211:
 {¶ 7} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex. rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 8} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35.
 THE HARTFORD 805 POLICY {¶ 9} In Linko v. Indemnity Insurance Company of North America
(2000), 90 Ohio St.3d 445, the Supreme Court of Ohio held the following at 449:
 {¶ 10} "Gyori [v. Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St.3d 565] stands for the proposition that we cannot know whether an insured has made an express, knowing rejection of UIM coverage unless there is a written offer and written rejection. It only follows that a valid rejection requires a meaningful offer, i.e., an offer that is an offer in substance and not just in name. * * * We agree with the following required elements for written offers imposed by Ohio appellate courts: a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits."
 {¶ 11} In Kemper v. Michigan Millers Mutual Insurance Company,98 Ohio St.3d 162, 2002-Ohio-7101, the Supreme Court of Ohio affirmed theLinko requirements survived the 1997 statutory amendments to R.C. 3937.18, but acknowledged that other evidence could be used to support said requirements.
 {¶ 12} Appellant argues the rejection in this case, attached to the affidavit of Steve Dietz as Exhibit C, does not meet the requirements ofLinko as it failed to list the premium for the coverage.
 {¶ 13} In his affidavit filed October 15, 2002, Steve Dietz, an underwriting officer of risk management for Hartford, explained the creation of the policies at issue:
 {¶ 14} "2. Cedar Fair maintained policy no. 45 CSED 62801 ('the 801 policy'), originally effective from 10/31/99 to 10/31/00.
 {¶ 15} "3. In June, 2000, Cedar Fair, Inc., in response to the Scott-Pontzer decision, decided to change its insurance program. Two new policies were created, effective 6/30/00 to 10/31/00. Policy No. 45 CSED 62804 ('the 804 Policy') was created as an `Executive' policy which provided UM/UIM coverage for certain specified employees only in the amount of $1,000,000. Policy No. 45 CSED 62805 (`the 805 Policy') was created as a `General' auto policy which, pursuant to a valid written rejection by Cedar Fair, Inc., provided no UM/UIM coverage.
 {¶ 16} "4. The 801 Policy was cancelled.
 {¶ 17} "5. The rejection of UM/UIM coverage for the 805 policy was executed by Bruce Jackson of Cedar Fair on June 30, 2000. A true and accurate copy of that rejection form is attached as Exhibit A hereto.
 {¶ 18} "* * *
 {¶ 19} "7. The 805 Policy was renewed, effective 10/31/2001. A true and accurate copy of the 805 Policy, as it existed on November 3, 2000, is attached hereto as Exhibit B.
 {¶ 20} "8. Peter Crage of Cedar Fair signed a rejection of UM/UIM coverage on 10/30/00 for the 805 Policy for the renewal policy period at issue. A true and accurate copy of that rejection form is attached as Exhibit C hereto."
 {¶ 21} The question is, does this explanation fulfill the requirements of Linko, supra?
 {¶ 22} In examining the 801 policy premiums vis à vis the 804 policy premiums, it is clear that a knowing rejection was made with reference to costs and coverage. We therefore conclude this rejection meets the test of R.C. 3937.18, and is presumptively valid given the affidavit of Mr. Dietz.
 {¶ 23} Appellant is not entitled to coverage under the 805 policy.
 THE HARTFORD 804 POLICY {¶ 24} The 804 policy is a "business auto" policy. It contains uninsured/underinsured motorists coverage. See, Endorsement No. HA 21 08 12 99, Ohio Uninsured Motorists Coverage — Bodily Injury, attached to the Dietz Affidavit as Exhibit A1. The uninsured/underinsured motorists coverage in the policy defines "Who Is An Insured" as follows:
 {¶ 25} "1. Anyone `occupying' a covered `auto' or a temporary substitute for a covered `auto'. * * *
 {¶ 26} "2. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured'."
 {¶ 27} It is undisputed that appellant was not occupying a covered auto at the time of the incident. He was a pedestrian. However, the policy contains "Drive Other Car Coverage — Broadened Coverage for Named Individuals." See, Endorsement No. CA 99 10 07 97, attached to the Dietz affidavit as Exhibit A1. This coverage applies to "Name of Individual" which consists of two parts: "any officer or employee to whom autos are furnished for business or personal use and who do not otherwise have a personal vehicle and personal auto coverage." (Emphasis added.)
 {¶ 28} It is undisputed that appellant is an "employee to whom autos are furnished for business." Appellant worked for Cedar Point as a private police officer and was furnished a patrol car to conduct his duties. See, J. Mox affidavit filed October 16, 2002. As for the second part, appellant had a vehicle at his disposal for personal use, but said vehicle was owned by his mother and he was covered under his mother's personal auto coverage. J. Mox depo. at 87-89; P. Mox depo. at 9-10, 29. Based upon these facts, appellant qualifies as a "Name of Individual" under the Drive Other Car Coverage. This coverage contains changes to the uninsured/underinsured motorists coverage, specifically adding the following to "Who Is An Insured":
 {¶ 29} "Any individual named in the Schedule and his or her `family members' are `insured' while `occupying' or while a pedestrian when being struck by any `auto' you don't own except:
 {¶ 30} "Any `auto' owned by that individual or by any `family member'."
 {¶ 31} Appellant was a pedestrian when he was struck by a vehicle owned by a park patron. J. Mox depo. at 32-33, 36-37, 73, 81-83. Pursuant to the cited language in the Drive Other Car Coverage, appellant is an insured for purposes of uninsured/underinsured motorists coverage.
 {¶ 32} Appellant is entitled to coverage under the 804 policy.
 {¶ 33} Upon review, we find the trial court did not err in granting summary judgment to Hartford on the 805 policy, but did err in granting summary judgment to Hartford on the 804 policy.
 {¶ 34} The sole assignment of error is denied in part and granted in part.
 {¶ 35} The judgment of the Court of Common Pleas of Muskingum County, Ohio is hereby affirmed in part and reversed in part.
Farmer, J., Gwin, P.J., and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Muskingum County, Ohio is affirmed in part and reversed in part. The matter is remanded to said court for further proceedings consistent with this opinion. Costs to Hartford.